<table>
<tr><td>
Larimer County District, Larimer County Justice Center<br>
201 LaPorte Avenue, Suite 100<br>
Fort Collins, CO 80521<br>
970-494-3500
</td><td>
DATE FILED: June 17, 2020 11:33 AM<br>
FILING ID: DFF962448055D<br>
CASE NUMBER: 2020CV30399
</td></tr>
</table>

|  |  |
|---|---|
| EP RESORTS, INC., ML PROPERTIES LLC, M-SQUARED PROPERTIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>Defendant. |  |
| Stewart W. Olive, Attorney Reg. #16134<br>Daniel L. Sapienza, Attorney Reg. # 54589<br>MARCH & OLIVE, LLC<br>Attorneys for Plaintiff<br>1312 South College Avenue<br>Fort Collins, CO 80524<br>Telephone: (970) 484-3990<br>Fax: (970) 482-5719<br>e-mail: stewart@olivelaw.com<br>　　　dan@bmarchlaw.com | Case No.<br><br><br><br><br><br><br><br>Courtroom ____ |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiffs, by and through their attorneys undersigned, and for their Complaint and Jury Demand states as follows:

### JURISDICTION

Jurisdiction is conferred upon this Court by Article VI, Section 9 of the Constitution of the State of Colorado.

### VENUE

Plaintiff EP Resorts, Inc., (EP) is a Colorado corporation in good standing with its principal place of business being located in Larimer County, Colorado.

EXHIBIT A

Plaintiff ML Properties, LLC, (ML) is a Colorado limited liability company in good standing with its principal place of business being located in Larimer County, Colorado.

Plaintiff M-Squared Properties, LLC, (M-Squared) is a Colorado limited liability company in good standing with its principal place of business being located in Larimer County, Colorado.

Defendant Travelers Casualty Insurance Company of America (Travelers,) is a Connecticut corporation registered to do business in the State of Colorado which conducts business in Larimer County, Colorado.

Venue is proper in Larimer County pursuant to C.R.C.P. 98, because the causes of action occurred in Larimer County, Colorado.

## FACTS AND ALLEGATIONS

1.  EP, ML, and M-Squared operate businesses in Estes Park, Colorado.

2.  EP is a hospitality company whose business included the operation of Marys Lake Lodge (MLL) which included a restaurant, lounge, wedding venue, and banquet facility all of which are a part of the Marys Lake Lodge Hotel Condominiums (MLLHC.) MLLHC is common interest community as defined by the Colorado Common Ownership Interest Act, C.R.S. §§ 38-33.3-101, et seq. and includes condominiums consistent with the Colorado Condominium Ownership Act, C.R.S. §§ 38-33-101, et seq.

3.  M-Squared is a property management company which operated as the rental property manager for the hotel condominium units in MLLHC.

4.  M-Squared was under contract with Marys Lake Lodge Combined Condominium Owners Association, Inc., (MLLCCOA) whereby M-Squared would act as the sole rental management company for the MLLCCOA from November 1, 2016 to September 30, 2018. MLLCCOA is a common interest community as defined by the Colorado Common Ownership Interest Act, C.R.S. §§ 38-33.3-101, et seq. and includes condominiums consistent with the Colorado Condominium Ownership Act, C.R.S. §§ 38-33-101, et seq. The contract allowed guests who rented units within the MLLCCOA access to the facilities located within MLL.

5.  ML is the owner of certain units within MLLHC and MLLCCOA.

6.  At all times pertinent hereto, EP, M-Squared, and ML have operated their businesses through the cash basis accounting method.

7.  EP specialized in hosting wedding events and banquets. EP required its wedding clients to sign contracts for the upcoming events. The contracts provided for the payment by the

2

EXHIBIT A

clients of the estimated costs of the event to be in the form of a deposit and two subsequent payments. The cancellation policy under the wedding contract provided that 50% of the initial deposit would be refunded if a notice of cancellation was received 9 months prior to the planned event date and no refunds would be issued after that date. The wedding contracts did include a clause that full refunds would be made in the event that MLL is closed due to an Act of God or War.

8. Based on the refund provisions of the wedding contracts, EP would consider the deposits and progress payments made under the wedding contracts as income when they were received. Since the deposits and progress payments under the wedding contracts were considered as income when made, EP paid federal and state income taxes on the deposits in the year in which the deposits and payments were received.

9. M-Squared operated under similar contracts and refund policies as did EP. M-Squared also consider the deposits and progress payments made under rental agreements as income when they were received. Since the deposits and progress payments under the rental agreements were considered as income when made, M-Square paid federal and state income taxes on the deposits in the year in which the deposits and payments were received.

10. Travelers issued policy number 680-2C363327 (Policy) on or about August 2013, listing EP, ML, and M-Squared as named insureds.

11. The Policy is a Restaurant PAC policy, family-style, which contains Business Owners Coverage.

12. The Policy includes coverage for lost business income equal to "Actual loss for 12 consecutive months."

13. The Policy includes a provision that the amount of business loss is determined based on several factors including "Your financial records and accounting procedures."

14. On or about June 23, 2018, a fire occurred in MLL (Fire.)

15. The Fire destroyed the MLL.

16. As a result of the Fire, EP was unable to use MLL for its business. EP was also forced to cancel previously scheduled wedding events and banquets and to refund the deposits and progress payments received under upcoming wedding contracts. EP was unable to book new wedding events and banquets due to the loss of the use of MLL. EP was unable to provide meal and bar services to other customers due to the loss of the use of MLL.

17. As a direct and proximate result of the Fire, EP has suffered substantial business losses for the 12 months between June 23, 2018 and June 22, 2019.

3

EXHIBIT A

18.   The Fire deprived M-Squared of the ability to rent hotel units within the MLLHC. M-Squared was also forced to cancel previously scheduled rentals of hotel units within the MLL and to refund the deposits received for upcoming rentals of hotel units. M-Squared was unable to book new rentals of hotel units due to the loss of the use of MLL.

19.   The Fire resulted in the MLLCCOA terminating the contract with M-Square effective October 1. 2018 because M-Squared was no longer able to provide all the services and amenities listed in its contract with MLLCCOA due to the loss the use of MLL.

20.   As a direct and proximate result of the Fire, M-Squared has suffered substantial business losses for the 12 months between June 23, 2018 and June 22, 2019.

21.   EP and M-Squared submitted claims under the Policy to Defendant for lost business income based upon their cash-based accounting system.

22.   Defendant paid portions of EP's and M-Squared's claims based upon Defendant's calculations of the lost business income based upon the Defendant's application of an accrual system of accounting to EP's and M-Squared's financial records even though EP and M-Squared utilize cash-based accounting systems for their financial records.

23.   EP and M-Squared have repeatedly disputed Defendant's application of an accrual system of accounting to their claims based upon the language in the Policy that their losses should be determined in accordance with their own cash based financial records and accounting procedures.

24.   EP and M-Squared have repeatedly notified Defendant that the delays in the payment of the undisputed portions of their lost business income claims was causing EP and M-Squared further financial hardships

25.   Defendant has denied the balance of EP's and M-Squared's claims based in large part upon Defendant's position that the deposits and progress payments under the wedding contracts and rental agreements are not income when received pursuant to an accrual-based accounting system analysis even though EP and M-Squared have taken those into income and paid taxes on the same in the year that they were received.

26.   As a result of Defendant's position regarding the application of the accrual accounting system to EP's and M-Squared's claims, the payments of those undisputed portions of EP's and M-Squared's lost business claims were unreasonably delayed.

27.   Defendant has refused to make adequate payment to EP and M-Squared as was required under the Policy.

28.   Defendant's refusal to make adequate payment to EP and M-Squared was made without a reasonable basis in fact or law.

4

EXHIBIT A

29. Defendant's refusal to make adequate payment to EP and M-Squared was made in bad faith and for the purpose of denying the benefits of contract for lost business income coverage under the Policy.

30. Defendant's refusal to make adequate payment to EP and M-Square was an unlawful attempt to force EP and M-Squared to accept less money than the amount due under the Policy.

31. Defendant's position denying the balance of EP's and M-Squared's claims is unreasonable and in breach of the terms of the Policy.

32. Defendant owed EP and M-Squared the following duties, among others: (a) a duty to honor the insurance contract for the entire duration of the Policy; (b) a duty to conduct a prompt, reasonable and diligent investigation of the facts of the case to determine the validity of the claims made by EP and M-Squared against Defendant; (c) a duty to evaluate the EP's and M-Squared's claims fairly; (d) a duty to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim where liability is reasonably clear; (e) a duty to act promptly and reasonably in settling the claim; (f) a duty not to reject a reasonable and fair offer of settlement; (g) a duty not to put its insureds through unnecessary litigation; (h) a duty not to put its insureds' assets at risk; (i) a duty to refrain from actions that would injure the EP's and M-Squared's insured ability to obtain the benefits of the insurance contract; and (j) a duty of good faith and fair dealing.

33. EP and M-Squared allege that Defendant breached its duties owed to EP and M-Squared by, among other things: (a) failing to honor the Policy; (b) failing to conduct a prompt, reasonable and diligent investigation of the claims made against Defendant; (c) failing to evaluate the claim fairly; (d) failing to tender the balance of the claims; (e) delaying the payment of the undisputed portions of the claims; (f) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims; (g) not making reasonable settlement offers to * offer the claims; (h) failing to accept reasonable and fair offers of settlement; (i) putting its insureds, EP and M-Squared, through unnecessary litigation; and (j) failing to pay any reasonable portion of the insurance coverage to Plaintiffs herein.

34. As a direct and approximate result of Defendant's breaches of its duties that it owed to EP and M-Squared, EP and M-Squared have been deprived of the benefits to which they were entitled and for which they bargained in the insurance contract, and were forced to incur expenses to obtain the benefits to which they were otherwise entitled and Plaintiffs have otherwise been damaged in amounts to be determined at trial.

35. Defendant's actions herein constitute bad faith insurance practices.

36. Plaintiffs have been required to engage the services of attorneys, and, accordingly, have incurred attorneys' fees and costs to bring this action.

5

EXHIBIT A

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

37.  Plaintiffs incorporate the allegations contained in paragraphs 1-36 above, and further allege as follows:

38.  The Policy is a valid and existing insurance policy between Plaintiffs and Defendant.

39.  Plaintiffs performed or were excused from performance under the Policy.

40.  Defendant breached the Policy by delaying payment of the undisputed portion of EP's and M-Squared's claims.

41.  Defendant breached the Policy by denying payment of the balance of EP's and M-Squared's claims.

42.  As a direct and proximate result of Defendant's breaches, EP and M-Squared have suffered actual damages including, but not limited to: lost business income, incidental and consequential damages, expert consultant fees, attorney fees and costs, and such other and further damages as may be proven at trial.

WHEREFORE, Plaintiffs hereby request that the Court enter judgment in their favor and against Defendant in such amount as will fully compensate them for their contract damages, including, but not limited to: lost business income, incidental and consequential damages, expert consultant fees, attorney fees and costs, and such other and further relief as the Court may deem proper in these premises.

### SECOND CLAIM FOR RELEIF
(Common Law Bad Faith)

43.  Plaintiffs incorporate the allegations contained in paragraphs 1-42 above, and further allege as follows:

44.  EP and M-Squared have suffered actual damages and losses as a direct and proximate result of Defendant's pattern of conduct in delaying and denying their claims.

45.  Defendant acted unreasonably in delaying and denying payment of EP's and M-Squared's claims.

46.  Defendant knew that its conduct and position in delaying and denying EP's and M-Squared's claims were unreasonable.

47.  Defendant owed Plaintiffs the duty of good faith and fair dealing.

EXHIBIT A

48.   Defendant breached its duty of good faith and fair dealing by unreasonably delaying
      payment and denying payment when it knew its delay and denial was unreasonable.

49.   Defendant acted with reckless disregard to the fact its conduct and position in delaying
      and denying EP's and M-Squared's claims were unreasonable when it took the position
      that the accrual system of accounting applied to EP's and M-Squared's claims when it
      knew that EP and M-Squared utilize a cash-based system of accounting for their financial
      records.

50.   Defendant's conduct imposition regarding the application of the accrual system of
      accounting to EP's and M-Squared's claims is without a reasonable basis when it had
      knowledge that EP and M-Squared utilized a cash basis system accounting.

51.   Defendant was deliberately indifferent in taking the position regarding the application of
      an accrual system accounting to the claims in this matter when it had knowledge that EP
      and M-Squared utilized a cash basis system of accounting.

52.   Defendant's unreasonable conduct and position were the direct and proximate causes of
      EP's and M-Squared's damages and losses.

   WHEREFORE, Plaintiffs hereby request that the Court enter judgment in their favor and
against Defendant in such amount as will fully compensate them for their common law bad faith
damages, including, but not limited to: lost business income, incidental and consequential
damages, expert consultant fees, attorney fees and costs, and such other and further relief as the
Court may deem proper in these premises.

### THIRD CLAIM FOR RELIEF
(Violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116)

53.   Plaintiffs incorporate the allegations contained in paragraphs 1-52 above, and further
      allege as follows:

54.   Plaintiffs are first party claimants under the Policy.

55.   Section 10-3-1115(1)(a) C.R.S., provides that a person engaged in the business of
      insurance shall not unreasonably delay or deny payment of a claim for benefits owed to
      or on behalf of any first-party claimant.

56.   Defendant delayed and denied payment of benefits owed under the Policy to EP and M-
      Squared.

57.   Defendant's delay and denial of the payments of the benefits owed under the Policy to EP
      and M-Squared was without a reasonable basis.

7

EXHIBIT A

58.   Defendant's conduct violated the requirements of §10-3-1115(1)(a) C.R.S.

59.   Defendant's conduct in violation of the requirements of §10-3-1115(1)(a) C.R.S., entitles
       the Plaintiff's to the remedies set forth in §10-3-1116(1) C.R.S.

60.   Section 10-3-1116(1) C.R.S., provides a first-party claimant as defined in §10-3-1115
       C.R.S., whose claim for payment of benefits has been unreasonably delayed or denied
       may bring an action in a district court to recover reasonable attorney fees and court costs
       and two times the covered benefit.

61.   EP and M-Squared have suffered damages and losses as a result of Defendant's delay and
       denial of payment of benefits owed to them under the Policy.

62.   Plaintiffs have been required to engage the services of attorneys, and, accordingly, have
       incurred attorneys' fees and costs to bring this action.

       WHEREFORE, Plaintiffs hereby request that the Court enter judgment in their favor and
against Defendant in such amount as will fully compensate them for their bad faith damages and
the remedies provided by statute, including, but not limited to: lost business income, incidental
and consequential damages, two times the amount of their claims, expert consultant fees,
attorney fees and costs, and such other and further relief as the Court may deem proper in these
premises.

JURY DEMAND

       Plaintiffs hereby demand that all issues of fact be tried to a jury.

       Dated this 17th day of June, 2020.

MARCH & OLIVE, LLC
*Original Signature on File*


/S      Stewart W. Olive
          Attorney at Law


Plaintiffs' address:
2625 Mary's Lake Road
Estes Park, CO 80517

8

EXHIBIT A