DATE FILED: August 5, 2020 3:47 PM
FILING ID: 8D43F5478979E
CASE NUMBER: 2020CV30399

| | |
|---|---|
| Larimer County District, Larimer County Justice Center<br>201 LaPorte Avenue, Suite 100<br>Fort Collins, CO 80521<br>970-494-3500 | |
| EP RESORTS, INC., ML PROPERTIES LLC, M-SQUARED PROPERTIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA; and ESTES PARK VACATION RENTALS, INC., A COLORADO CORPORATION, D/B/A SKYRUN-ESTES PARK VACATION RENTALS, INC.<br><br>Defendants. | ▲COURT USE ONLY▲ |
| Stewart W. Olive, Attorney Reg. #16134<br>Daniel L. Sapienza, Attorney Reg. # 54589<br>MARCH & OLIVE, LLC<br>Attorneys for Plaintiff<br>1312 South College Avenue<br>Fort Collins, CO  80524<br>Telephone: (970) 484-3990<br>Fax: (970) 482-5719<br>e-mail: stewart@olivelaw.com<br>            dan@bmarchlaw.com | Case No. 2020CV030399<br><br><br><br><br><br>Division 5A |
| **AMENDED COMPLAINT AND JURY DEMAND** | |

COMES NOW the Plaintiffs, by and through their attorneys undersigned, and for their Amended Complaint and Jury Demand states as follows:

## JURISDICTION

Jurisdiction is conferred upon this Court by Article VI, Section 9 of the Constitution of the State of Colorado.

EXHIBIT C

## VENUE

Plaintiff EP Resorts, Inc., (EP) is a Colorado corporation in good standing with its principal place of business being located in Larimer County, Colorado.

Plaintiff ML Properties, LLC, (ML) is a Colorado limited liability company in good standing with its principal place of business being located in Larimer County, Colorado.

Plaintiff M-Squared Properties, LLC, (M-Squared) is a Colorado limited liability company in good standing with its principal place of business being located in Larimer County, Colorado.

Defendant Travelers Casualty Insurance Company of America (Travelers,) is a Connecticut corporation registered to do business in the State of Colorado which conducts business in Larimer County, Colorado.

Defendant Estes Park Vacation Rentals, Inc., d/b/a SkyRun-Estes Park Vacation Rentals, Inc. (SkyRun) is a Colorado corporation in good standing with its principal place of business being located in Larimer County, Colorado.

Venue is proper in Larimer County pursuant to C.R.C.P. 98, because the causes of action occurred in Larimer County, Colorado.

## PROCEDURE

This Amended Complaint is being filed pursuant to C.R.C.P. 15(a) as a matter of course since no responsive pleading has been filed.

## FACTS AND ALLEGATIONS

1. EP, ML, and M-Squared operate businesses in Estes Park, Colorado.

2. EP is a hospitality company whose business included the operation of Marys Lake Lodge (MLL) which included a restaurant, lounge, wedding venue, and banquet facility all of which are a part of the Marys Lake Lodge Hotel Condominiums (MLLHC.)  MLLHC is common interest community as defined by the Colorado Common Ownership Interest Act, C.R.S. §§ 38-33.3-101, et seq. and includes condominiums consistent with the Colorado Condominium Ownership Act, C.R.S. §§ 38-33-101, et seq.

3. M-Squared is a property management company which operated as the rental property manager for the hotel condominium units in MLLHC. M-Squared additionally owns and operates a business engaged in promoting, marketing, and renting condominium units for short-term vacations in the Estes Park, Colorado, area.

4. M-Squared is the owner of 4 garage units at Marys Lake Lodge.

EXHIBIT  C

5. SkyRun is a Colorado corporation which owns and operates a business engaged in promoting, marketing, and renting condominium units for short-term vacations in the Estes Park, Colorado, area.

6. M-Squared contracted with Marys Lake Lodge Combined Condominium Owners Association, Inc., (MLLCCOA) whereby M-Squared would act as the sole rental management company for the MLLCCOA from November 1, 2016 to September 30, 2018. MLLCCOA is a common interest community as defined by the Colorado Common Ownership Interest Act, C.R.S. §§ 38-33.3-101, et seq. and includes condominiums consistent with the Colorado Condominium Ownership Act, C.R.S. §§ 38-33-101, et seq. The contract allowed guests who rented units within the MLLCCOA access to the facilities located within MLL.

7. As a part of its duties as rental manager for MLLCCOA, M-Squared took advanced reservations for units and rental deposits from rental guests when reservations were made to rent units located within the MLLCCOA.

8. ML is the owner of certain units within MLLHC and MLLCCOA.

9. At all times pertinent hereto, EP, M-Squared, and ML have operated their businesses through the cash basis accounting method.

10. EP specialized in hosting wedding events and banquets. EP required its wedding clients to sign contracts for the upcoming events. The contracts provided for the payment by the clients of the estimated costs of the event to be in the form of a deposit and two subsequent payments. The cancellation policy under the wedding contract provided that 50% of the initial deposit would be refunded if a notice of cancellation was received 9 months prior to the planned event date and no refunds would be issued after that date. The wedding contracts did include a clause that full refunds would be made in the event that MLL is closed due to an Act of God or War.

11. Based on the refund provisions of the wedding contracts, EP would consider the deposits and progress payments made under the wedding contracts as income when they were received. Since the deposits and progress payments under the wedding contracts were considered as income when made, EP paid federal and state income taxes on the deposits in the year in which the deposits and payments were received.

12. M-Squared operated under similar contracts and refund policies as did EP. M-Squared also consider the deposits and progress payments made under rental agreements as income when they were received. Since the deposits and progress payments under the rental agreements were considered as income when made, M-Square paid federal and state income taxes on the deposits in the year in which the deposits and payments were received.

EXHIBIT C

13. Travelers issued policy number 680-2C363327 (Policy) on or about August 2013, listing EP, ML, and M-Squared as named insureds.

14. The Policy is a Restaurant PAC policy, family-style, which contains Business Owners Coverage.

15. The Policy includes coverage for lost business income equal to "Actual loss for 12 consecutive months."

16. The Policy includes a provision that the amount of business loss is determined based on several factors including "Your financial records and accounting procedures."

17. On or about June 23, 2018, a fire occurred in MLL (Fire.)

18. The Fire destroyed the MLL.

19. As a result of the Fire, EP was unable to use MLL for its business. EP was also forced to cancel previously scheduled wedding events and banquets and to refund the deposits and progress payments received under upcoming wedding contracts. EP was unable to book new wedding events and banquets due to the loss of the use of MLL. EP was unable to provide meal and bar services to other customers due to the loss of the use of MLL.

20. As a direct and proximate result of the Fire, EP has suffered substantial business losses for the 12 months between June 23, 2018 and June 22, 2019.

21. The Fire deprived M-Squared of the ability to rent hotel units within the MLLHC. M-Squared was also forced to cancel previously scheduled rentals of hotel units within the MLL and to refund the deposits received for upcoming rentals of hotel units. M-Squared was unable to book new rentals of hotel units due to the loss of the use of MLL.

22. The garage units owned by M-Squared at Marys Lake Lodge were not damaged in the fire.

23. The Fire resulted in the MLLCCOA terminating the contract with M-Square effective October 1, 2018 because M-Squared was no longer able to provide all the services and amenities listed in its contract with MLLCCOA due to the loss the use of MLL.

24. MLLCCOA decided to retain SkyRun as the new rental manager for MLLCCOA effective October 1, 2018.

### Contract with SkyRun

25. In order to provide an orderly transition of the rental manager duties, M-Squared, SkyRun, and MLLCCOA entered into a Transition Agreement (Agreement) dated September 6, 2018.

EXHIBIT  C

26. The Agreement provides M-Squared shall transfer certain assets owned by M-Squared which were associated with rental management of MLLCCOA.

27. The Agreement also provides that M-Squared would transfer deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

28. M-Squared completed the transfer of the deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018, to SkyRun as provided by the Agreement.

29. The Agreement provides that SkyRun is to pay to M-Squared 20% of all of the deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

30. Despite repeated demands, SkyRun has failed or refused to pay to M-Squared the 20% of all of the deposits received by M-Squared which were transferred to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018, as required by the Agreement.

31. The Agreement provides that SkyRun is to pay to M-Squared 20% of all monies received by SkyRun for rentals which were booked prior to October 1, 2018.

32. Despite repeated demands, SkyRun has failed or refused to pay to M-Squared the 20% of all of the monies received by SkyRun for rental of units within MLLCCOA which were booked prior to October 1, 2018, and which occurred after October 1, 2018, as required by the Agreement.

33. The Agreement provides that SkyRun was to sub-lease the 4 garage units owned by ML Properties, LL and leased to M-Squared in Marys Lake Lodge beginning on October 1, 2018 and continuing thereafter for a period of two years. The rental rate for the lease of the garage units is $1,600 per month.

34. SkyRun has had possession of the 4 garage units leased by M-Squared since October 1, 2018.

35. SkyRun has failed or refused to pay the full amount of rent to M-Squared for the sub-lease of the garage units for the months of October, 2018, through August, 2020.

36. SkyRun was to have transferred the responsibility for paying for certain utilities with the appropriate utility provider from M-Squared to SkyRun.

37. SkyRun has failed or refused to transfer the responsibility for paying certain utilities with the appropriate utility provider from M-Squared to SkyRun.

EXHIBIT C

38. The Agreement provides in the event of a default of the terms of the Agreement, the nondefaulting party is entitled to its reasonable attorney fees and costs associated with any proceeding to enforce any obligation in the Agreement.

39. M-Squared has complied with all notice provisions contained in the Agreement.

40. M-Squared has incurred injuries, losses, and damages as a result of SkyRun's failures or refusals to abide by the terms of the Agreement.

## Claims to Travelers Insurance

41. As a direct and proximate result of the Fire, M-Squared has suffered substantial business losses for the 12 months between June 23, 2018 and June 22, 2019.

42. EP and M-Squared submitted claims under the Policy to Travelers for lost business income based upon their cash-based accounting system.

43. Travelers paid portions of EP's and M-Squared's claims based upon Travelers' calculations of the lost business income based upon the Travelers' application of an accrual system of accounting to EP's and M-Squared's financial records even though EP and M-Squared utilize cash-based accounting systems for their financial records.

44. EP and M-Squared have repeatedly disputed Travelers' application of an accrual system of accounting to their claims based upon the language in the Policy that their losses should be determined in accordance with their own cash based financial records and accounting procedures.

45. EP and M-Squared have repeatedly notified Travelers that the delays in the payment of the undisputed portions of their lost business income claims was causing EP and M-Squared further financial hardships

46. Travelers has denied the balance of EP's and M-Squared's claims based in large part upon Travelers position that the deposits and progress payments under the wedding contracts and rental agreements are not income when received pursuant to an accrual-based accounting system analysis even though EP and M-Squared have taken those into income and paid taxes on the same in the year that they were received.

47. As a result of Travelers' position regarding the application of the accrual accounting system to EP's and M-Squared's claims, the payments of those undisputed portions of EP's and M-Squared's lost business claims were unreasonably delayed.

48. Travelers has refused to make adequate payment to EP and M-Squared as was required under the Policy.

49. Travelers' refusal to make adequate payment to EP and M-Squared was made without a reasonable basis in fact or law.

EXHIBIT C

50. Travelers' refusal to make adequate payment to EP and M-Squared was made in bad faith and for the purpose of denying the benefits of contract for lost business income coverage under the Policy.

51. Travelers' refusal to make adequate payment to EP and M-Square was an unlawful attempt to force EP and M-Squared to accept less money than the amount due under the Policy.

52. Travelers' position denying the balance of EP's and M-Squared's claims is unreasonable and in breach of the terms of the Policy.

53. Travelers owed EP and M-Squared the following duties, among others:  (a) a duty to honor the insurance contract for the entire duration of the Policy; (b) a duty to conduct a prompt, reasonable and diligent investigation of the facts of the case to determine the validity of the claims made by EP and M-Squared against Travelers; (c) a duty to evaluate the EP's and M-Squared's claims fairly; (d) a duty to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim where liability is reasonably clear; (e) a duty to act promptly and reasonably in settling the claim; (f) a duty not to reject a reasonable and fair offer of settlement; (g) a duty not to put its insureds through unnecessary litigation; (h) a duty not to put its insureds' assets at risk; (i) a duty to refrain from actions that would injure the EP's and M-Squared's insured ability to obtain the benefits of the insurance contract; and (j) a duty of good faith and fair dealing.

54. EP and M-Squared allege that Travelers breached its duties owed to EP and M-Squared by, among other things:  (a) failing to honor the Policy; (b) failing to conduct a prompt, reasonable and diligent investigation of the claims made against Travelers; (c) failing to evaluate the claim fairly; (d) failing to tender the balance of the claims; (e) delaying the payment of the undisputed portions of the claims; (f) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims; (g) not making reasonable settlement offers for the claims; (h) failing to accept  reasonable and fair offers of settlement; (i) putting its insureds, EP and M-Squared, through unnecessary litigation; and (j) failing to pay any reasonable portion of the insurance coverage to Plaintiffs herein.

55. As a direct and approximate result of Travelers' breaches of its duties that it owed to EP and M-Squared, EP and M-Squared have been deprived of the benefits to which they were entitled and for which they bargained in the insurance contract, and were forced to incur expenses to obtain the benefits to which they were otherwise entitled and Plaintiffs have otherwise been damaged in amounts to be determined at trial.

56. Travelers' actions herein constitute bad faith insurance practices.

EXHIBIT  C

57. Plaintiffs have been required to engage the services of attorneys, and, accordingly, have incurred attorneys' fees and costs to bring this action.

### FIRST CLAIM FOR RELIEF
Breach of Contract
(Travelers)

58. Plaintiffs hereby restate and incorporate all the allegations contained in paragraphs 1-57 above and further allege as follows:

59. The Policy is a valid and existing insurance policy between Plaintiffs and Travelers.

60. Plaintiffs performed or were excused from performance under the Policy.

61. Travelers breached the Policy by delaying payment of the undisputed portion of EP's and M-Squared's claims.

62. Travelers breached the Policy by denying payment of the balance of EP's and M-Squared's claims.

63. As a direct and proximate result of Travelers' breaches, EP and M-Squared have suffered actual damages including, but not limited to: lost business income, incidental and consequential damages, expert consultant fees, attorney fees and costs, and such other and further damages as may be proven at trial.

WHEREFORE, Plaintiffs hereby request that the Court enter judgment in their favor and against Travelers in such amount as will fully compensate them for their contract damages, including, but not limited to: lost business income, incidental and consequential damages, expert consultant fees, attorney fees and costs, and such other and further relief as the Court may deem proper in these premises.

### SECOND CLAIM FOR RELEIF
Common Law Bad Faith
(Travelers)

64. Plaintiffs hereby restate and incorporate all the allegations contained in paragraphs 1-63 above and further allege as follows:

65. EP and M-Squared have suffered actual damages and losses as a direct and proximate result of Travelers' pattern of conduct in delaying and denying their claims.

66. Travelers acted unreasonably in delaying and denying payment of EP's and M-Squared's claims.

67. Travelers knew that its conduct and position in delaying and denying EP's and M-Squared's claims were unreasonable.

EXHIBIT  C

68. Travelers owed Plaintiffs the duty of good faith and fair dealing.

69. Travelers breached its duty of good faith and fair dealing by unreasonably delaying payment and denying payment when it knew its delay and denial was unreasonable.

70. Travelers acted with reckless disregard to the fact its conduct and position in delaying and denying EP's and M-Squared's claims were unreasonable when it took the position that the accrual system of accounting applied to EP's and M-Squared's claims when it knew that EP and M-Squared utilize a cash-based system of accounting for their financial records.

71. Travelers' conduct imposition regarding the application of the accrual system of accounting to EP's and M-Squared's claims is without a reasonable basis when it had knowledge that EP and M-Squared utilized a cash basis system accounting.

72. Travelers was deliberately indifferent in taking the position regarding the application of an accrual system accounting to the claims in this matter when it had knowledge that EP and M-Squared utilized a cash basis system of accounting.

73. Travelers' unreasonable conduct and position were the direct and proximate causes of EP's and M-Squared's damages and losses.

WHEREFORE, Plaintiffs hereby request that the Court enter judgment in their favor and against Travelers in such amount as will fully compensate them for their common law bad faith damages, including, but not limited to: lost business income, incidental and consequential damages, expert consultant fees, attorney fees and costs, and such other and further relief as the Court may deem proper in these premises.

### THIRD CLAIM FOR RELIEF
Violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116
(Travelers)

74. Plaintiffs hereby restate and incorporate all the allegations contained in paragraphs 1-73 above and further allege as follows:

75. Plaintiffs are first party claimants under the Policy.

76. Section 10-3-1115(1)(a) C.R.S., provides that a person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

77. Travelers delayed and denied payment of benefits owed under the Policy to EP and M-Squared.

78. Travelers' delay and denial of the payments of the benefits owed under the Policy to EP and M-Squared was without a reasonable basis.

EXHIBIT C

79. Travelers' conduct violated the requirements of §10-3-1115(1)(a) C.R.S.

80. Travelers' conduct in violation of the requirements of §10-3-1115(1)(a) C.R.S., entitles the Plaintiff's to the remedies set forth in §10-3-1116(1) C.R.S.

81. Section 10-3-1116(1) C.R.S., provides a first-party claimant as defined in §10-3-1115 C.R.S., whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

82. EP and M-Squared have suffered damages and losses as a result of Travelers' delay and denial of payment of benefits owed to them under the Policy.

83. Plaintiffs have been required to engage the services of attorneys, and, accordingly, have incurred attorneys' fees and costs to bring this action.

WHEREFORE, Plaintiffs hereby request that the Court enter judgment in their favor and against Travelers in such amount as will fully compensate them for their bad faith damages and the remedies provided by statute, including, but not limited to: lost business income, incidental and consequential damages, two times the amount of their claims, expert consultant fees, attorney fees and costs, and such other and further relief as the Court may deem proper in these premises.

## FOURTH CLAIM FOR RELIEF
Breach of Contract
(SkyRun)

84. Plaintiffs hereby restate and incorporate all the allegations contained in paragraphs 1-83 above and further allege as follows:

85. The Agreement provides that M-Squared would transfer deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

86. M-Squared completed the transfer of the deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018, to SkyRun as provided by the Agreement.

87. Despite repeated demands, SkyRun has failed or refused to pay to M-Squared the 20% of all of the deposits received by M-Squared which were transferred to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018, as required by the Agreement.

EXHIBIT C

88. SkyRun is in default of the Agreement by failing to pay to M-Squared the 20% of all of the deposits received by M-Squared which were transferred to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

89. SkyRun was required under the terms the Agreement to pay to M-Squared 20% of all monies received by SkyRun for rentals which were booked prior to October 1, 2018.

90. Despite repeated demands, SkyRun has failed or refused to pay to M-Squared the 20% of all of the monies received by SkyRun for rental of units within MLLCCOA which were booked prior to October 1, 2018, and which occurred after October 1, 2018.

91. SkyRun is in default of the Agreement by failing to pay to M-Squared the 20% of all of the monies received by SkyRun for rental of units within MLLCCOA which were booked prior to October 1, 2018, and which occurred after October 1, 2018.

92. The Agreements provides that SkyRun was to lease the 4 garage units leased by M-Squared in Marys Lake Lodge beginning on October 1, 2018 and continuing thereafter for a period of two years. The rental rate for the sub-lease of the garage units is $1,600 per month.

93. SkyRun has had possession of the 4 garage units leased by M-Squared since October 1, 2018.

94. SkyRun has failed or refused to pay the full amount of rent to M Squared for the sub-lease of the garage units for the months of October, 2018, through August, 2020.

95. SkyRun is in default of the Agreement by failing to pay to M-Squared the full monthly rent for the 4 garage units for the months of October, 2018 through August, 2020.

96. SkyRun was to have transferred the responsibility for paying for certain utilities with the appropriate utility provider from M-Squared to SkyRun.

97. SkyRun has failed or refused to transfer the responsibility for paying certain utilities with the appropriate utility provider from M-Squared to SkyRun.

98. SkyRun's defaults under the terms of the Agreement are material.

99. M-Squared has fully performed all of its obligations under the terms of the Agreement.

100. As a direct and proximate result of SkyRun's defaults of the Agreement, M-Squared has incurred injuries, losses, and damages. As a direct and proximate result of the LLC's breaches, Plaintiff has suffered actual damages including, but not limited to: monies owed from rental deposits; monies owed from rental monies received from

EXHIBIT C

rentals booked prior to October 1, 2018, which were received after October 1, 2018; unpaid rent on the 4 garage spaces; utility charges after October 1, 2018; incidental and consequential damages; attorney fees and costs.

WHEREFORE, M-Squared requests judgment be entered against SkyRun in such amount as is necessary to fully compensate it for its contract damages, including: monies owed from rental deposits; monies owed from rental monies received from rentals booked prior to October 1, 2018, which were received after October 1, 2018; unpaid rent on the 4 garage spaces; utility charges after October 1, 2018; incidental and consequential damages; attorney fees and costs; and, such other and further relief as the Court may deem proper in these premises.

<u>FIFTH CLAIM FOR RELIEF</u>
Conversion
(SkyRun)

101. Plaintiffs hereby restate and incorporate all the allegations contained in paragraphs 1-100 above and further allege as follows:

102. Pursuant to the Agreement, M-Squared paid all of the deposits it had received prior to October 1, 2018, which were for rentals to occur after October 1, 2018, to SkyRun.

103. SkyRun was to pay to M-Squared 20% of all of the deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

104. M-Squared relied upon SkyRun's representations and promises that it would pay M-Squared the 20% of all of the deposits received by M-Squared which were transferred to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018, as required by the Agreement.

105. SkyRun knowingly exercised control over the deposits and without authorization retained the funds for its own purposes.

106. SkyRun intended to permanently deprive M-Squared of the use or benefit of the deposit monies paid to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

107. SkyRun has exercised a distinct, unauthorized act of dominion or ownership of those portions of the deposit monies paid to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

108. SkyRun was to pay to M-Squared 20% of all of the monies it received for rentals booked prior to October 1, 2018, which occurred after October 1, 2018.

EXHIBIT C

109. M-Squared relied upon SkyRun's representations and promises that it would pay M-Squared 20% of all monies it received for rental of units within MLLCCOA which were booked prior to October 1, 2018, and which were to occur after October 1, 2018.

110. SkyRun knowingly exercised control over the monies it received from rental of units within MLLCCOA which were booked prior to October 1, 2018, and which occurred after October 1, 2018, and without authorization retained the funds for its own purposes.

111. SkyRun intended to permanently deprive M-Squared of the use or benefit of the monies received by SkyRun for rental of units within MLLCCOA which were booked prior to October 1, 2018, and which occurred after October 1, 2018.

112. SkyRun has exercised a distinct, unauthorized act of dominion or ownership of those portions of the deposit monies paid to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

113. M-Squared has suffered damages and losses as a direct and proximate result of SkyRun's unauthorized retention of monies rightfully belonging to M-Squared.

114. SkyRun has converted M-Squared monies for its own unauthorized purposes.

115. M-Squared has demanded the monies which were wrongfully retained by SkyRun and SkyRun has refused to tender the same to M-Squared.

WHEREFORE, M-Squared requests that the Court enter judgment in favor of M-Squared and against SkyRun for all of its damages and losses; incidental and consequential damages; interest from the date any cause of action accrued; attorney fees and costs; and, such other and further relief as the Court may deem proper in these premises.

### SIXTH CLAIM FOR RELIEF
Accounting
(SkyRun)

116. Plaintiffs hereby restate and incorporate all the allegations contained in paragraphs 1-115 above and further alleges as follows:

117. Pursuant to the Agreement, M-Squared paid all of the deposits it had received prior to October 1, 2018, which were for rentals to occur after October 1, 2018, to SkyRun.

118. SkyRun was to pay to M-Squared 20% of all of the deposits received by M-Squared to SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

EXHIBIT C

119. Despite repeated requests to do so, SkyRun has failed and refused to pay M-Squared the 20% of all of the deposits received by SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

120. Despite repeated requests to do so, SkyRun has failed and refused to provide M-Squared with a true and accurate accounting of the 20% of all deposits received by SkyRun for rental of units within MLLCCOA which were to occur after October 1, 2018.

121. SkyRun was to pay to M-Squared 20% of all the monies it received for rentals booked prior to October 1, 2018, which occurred after October 1, 2018.

122. Despite repeated requests to do so, SkyRun has failed and refused to provide M-Squared with a true and accurate accounting of the 20% of all of the monies it received for rental of units within MLLCCOA which were booked prior to October 1, 2018, which were to occur after October 1, 2018.

123. M-Squared is entitled to true and full information concerning the amounts collected by SkyRun to determine those monies owed to M-Squared under the Agreement.

124. The Court has the authority to summarily order the inspection or copying of the books, records and accounts demanded at SkyRun's expense.

125. As a direct and proximate result of the foregoing, M-Squared has been damaged in an amount to be determined at trial.

WHEREFORE, M-Squared requests that the Court enter an order requiring SkyRun to produce all of its books, records, and accounts related in any manner to the rental of units located within the MLLCCOA, and to enter judgment in favor of M-Squared and against SkyRun for: all of damages and losses; incidental and consequential damages; interest from the date any cause of action accrued; fees and costs; and, such other and further relief as the Court may deem proper in these premises.

### JURY DEMAND

Plaintiffs hereby demand that all issues of fact be tried to a jury.

Dated this 5th day of August, 2020.

MARCH & OLIVE, LLC
*Original Signature on File*


/S      Stewart W. Olive
         Attorney at Law

EXHIBIT  C

Plaintiffs' address:
2625 Mary's Lake Road
Estes Park, CO 80517

EXHIBIT C

CERTIFICATE OF SERVICE

This is to certify that on the 5th day of August, 2020, a true and correct copy of the foregoing Amended Complaint was filed with the Court through COLORADO COURTS ON LINE with notification of the filing provided to:

Greg Hearing
John Palmeri
GORDON REES SCULLY MANSUKHANI

            MARCH, OLIVE & PHARRIS, LLC
            Original Signature on File


            /S  Kristine Smith, CLA
              Certified Paralegal

EXHIBIT C